IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

UNITED STATES OF AMERICA    )
                             )
v.                           )    CASE NO. 1:22-CR-356-RAH-KFP
                             )
ALEXANDER RUSSAW, JR.        )

**REPORT AND RECOMMENDATION**
**OF THE MAGISTRATE JUDGE**

Before the Court is Defendant Alexander Russaw, Jr.'s Motion to Dismiss (Doc. 12) seeking dismissal of the indictment for pre-indictment delay. The Court held an evidentiary hearing on the motion on February 3, 2023. Upon consideration of the parties' briefs and exhibits (Docs. 18–23), arguments, and applicable law, the undersigned recommends the motion to dismiss the indictment be DENIED.

## I.    BACKGROUND

### A.    The 2020 Case—No. 20-CR-229-RAH-SMD

On April 24, 2020, Russaw was arrested by Enterprise police officers in Coffee County, Alabama. He was charged with second degree possession of marijuana and possession of a controlled substance. When he was arrested, he was in possession of a firearm.

On July 9, 2020, an ATF case agent presented a case based on the conduct to the United States Attorney's Office. On October 19, 2020, the Government filed a complaint in the Middle District against Russaw charging him with felon in possession of a firearm,

Case No. 20-CR-229-RAH-SMD, and he was subsequently indicted on that charge. Docs. 1, 4.

Russaw was arrested on December 14, 2020, on the indictment, and the Government provided discovery around the same date. On February 16, 2021, Russaw filed a Notice of Intent indicating that he wished to change his plea to guilty. *Id*. at Doc. 21. After the plea was taken, Russaw was sentenced on June 8, 2021, to a term of 37 months' imprisonment and three years of supervised release. *Id*. at Doc. 42. Russaw is still serving that sentence. He anticipated earning good time credits, getting released early to a halfway house, and being released from the Bureau of Prisons ("BOP") on June 25, 2023.

### B.     The 2022 Case—No. 22-CR-356-RAH-KFP

On June 10, 2020, less than two months after his April arrest, Russaw was arrested again by Enterprise police officers on outstanding warrants, and he was charged with third degree assault, second degree burglary, and trafficking cocaine.[1] When he was arrested, Russaw was in possession of 30 rounds of ammunition. Doc. 12, ¶ 3.

On July 15, 2021, a little over one month after Russaw was sentenced in the 2020 case, the assigned ATF case agent wrote a Recommendation for Prosecution recommending federal prosecutors bring charges based on Russaw's June 2020 possession of ammunition and narcotics in Coffee County. Doc. 18-1 at 15–17, DX 6.[2] After the

---

[1] The Presentence Investigation Report for the June 8, 2021, sentencing in the 2020 case reflected these June 2020 pending charges in Coffee County as part of Russaw's arrest history. *See* Case No. 20-CR-229, Doc. 41, ¶ 62. Coffee County later indicted Russaw on third degree assault and third degree burglary on September 30, 2021.

[2] The parties do not dispute that July 15, 2021 Recommendation was based on Russaw's June 10, 2020 arrest in Coffee County, but the Recommendation erroneously refers to April 24, 2020.

Recommendation received supervisory approval, it was presented to the United States Attorney's Office.

On December 1, 2022, a federal grand jury returned an indictment against Russaw charging in Count 1 a violation of the Controlled Substances Act (21 U.S.C. § 841(a)(1)) that on June 10, 2020, Russaw knowingly and intentionally possessed with intent to distribute a mixture containing a detectable amount of cocaine and in Count 2 charging Russaw with possession (on June 10, 2020) of ammunition by a convicted felon (30 rounds of .25-caliber ammunition). Case No. 22-CR-356-RAH-KFP, Doc. 1. Russaw, who was (and is) still serving his sentence in the 2020 case, made his initial appearance on December 23, 2022. *See* Doc. 6.

### C.    The Discovery Files

One witness was called during the Court's hearing on the pending motion to dismiss, Federal Defender's Office Investigator, Lee Anne Brantley. Doc. 27. She testified about her review of the discovery files for the 2020 and 2022 cases.

The discovery in the 2020 case identified ATF case agent Richard Maddox. Doc. 27 at 10:16–23. As relevant here, in addition to the arrest report related to the April 2020 conduct, which was the subject of the complaint and the indictment in that case, the discovery file also included a copy of the arrest report from Russaw's June 2020 Coffee County offenses. Doc. 27 at 5:4–11.

Discovery in the instant 2022 case was provided on or about December 23, 2022. It was the same as the discovery file in the 2020 case but for the following additions: (i) a November 3, 2020 drug chemistry certificate of analysis returned to the Enterprise Police

Department showing results for cocaine (Doc. 26-5, DX 14), (ii) photographs of the 30 rounds of ammunition and the box containing the ammunition (Doc. 26-3, DX 12A–D), (iii) a nexus report on the manufacturing of the ammunition, and (iv) body camera videos from officers on June 10, 2020. *See* Doc. 27 at 5:4–15; 6:11–8:12; 8:20–24; 9:4–9; 11:12–17; 12:11–21.

## II.   DISCUSSION

"The limit on pre-indictment delay is usually set by the statute of limitations.  But, the Due Process Clause can bar an indictment even when the indictment is brought within the limitation period." *United States v. Foxman*, 87 F.3d 1220, 1222 (11th Cir. 1996); *accord United States v. Solomon*, 686 F.2d 863, 871 (11th Cir. 1982) ("The yardstick for measuring the constitutionality of pre-indictment delays is the due process clause, not the speedy trial clause, which governs delays after indictment.") (citing *United States v. Marion*, 404 U.S. 307 (1971)).[3]

"[T]he Fifth Amendment requires the dismissal of an indictment, even if it is brought within the statute of limitations, if the defendant can prove that the Government's delay in bringing the indictment was a deliberate device to gain an advantage over him and that it caused him actual prejudice in presenting his defense." *United States v. Gouveia*, 467 U.S. 180, 192 (1984). The test is a conjunctive one—both actual prejudice and intentional action to gain tactical advantage must be shown. *United States v. Vickers*, 333 Fed. App'x. 458, 459–60 (11th Cir. 2009) (citing *Marion*, 404 U.S. at 324).

---

[3] The parties do not dispute that the indictment was filed within the statute of limitations.

"[T]his standard is an exceedingly high one[.]" *Tiemens v. United States*, 724 F.2d 928, 929 (11th Cir. 1984). It is the defendant's burden to show the necessary prejudice and deliberate action to gain a tactical advantage. *United States v. Butler*, 792 F.2d 1528, 1533 (11th Cir. 1986). "[T]he Constitution places a very heavy burden on a defendant to show that pre-indictment delay has offended due process." *United States v. Orum,* No. 2:12-CR-57-MHT, 2012 WL 5382843, at *1 (M.D. Ala. Nov. 2, 2012) (citing *Stoner v. Graddick,* 751 F.2d 1535, 1540 (11th Cir. 1985)); *see also Foxman*, 87 F.3d at 1222.

Russaw asserts the indictment was filed in violation of his Fifth Amendment right to due process because he has lost, among other things, an opportunity for concurrent sentencing. The Government responds that the motion should be denied because Russaw has not demonstrated actual prejudice or delay for the purpose of gaining a tactical advantage. Because the Court concludes Russaw cannot carry his burden on either part of the test, the motion should be denied.

### A.    Tactical Advantage

"Tactical advantage is the touchstone in pre-indictment delay cases." *United States v. Wetherald*, 636 F.3d 1315, 1324 (11th Cir. 2011).  "We look at unreasonableness in pre-indictment delay cases through the lens of tactical advantage, and the court 'has said that the motivations behind the delay must violate 'fundamental conceptions of justice', or a sense of 'fair play' or 'decency'.'" *Id*. (quoting *United States v. Parker*, 586 F.2d 422, 431 (5th Cir. 1978); *United States v. Shaw*, 555 F.2d 1295, 1299 (5th Cir. 1977)).

1.   Russaw's Tactical Advantage Argument and the Government's Response

Russaw argues the Government delayed the indictment to gain a tactical advantage in achieving an overall longer sentence for Russaw by avoiding resolution of the charges together with concurrent sentencing. The Government responds that Russaw cannot show that the Government's delay was deliberate in order to gain tactical advantage over him *at trial*. The Government argues that the tactical advantage test assesses trial advantage, not advantage gained or sought at sentencing. Even if delay sought for the purpose of gaining tactical advantage at sentencing were enough to satisfy this part of the test, the Government argues that Russaw has failed to carry his burden to show this kind of deliberate action. The Court agrees.

2.   Tactical Advantage Analysis

The Court first considers the tactical advantage test assuming intentional action to gain tactical advantage over sentencing could support a Fifth Amendment due process claim for pre-indictment delay. Russaw argues the Government's intent can be gleaned from the fact that the discovery files in the 2020 case and the 2022 case are nearly identical. *See supra*, § I.C. Because of the similarity of the discovery files and the involvement of the same ATF case agent, Russaw argues the Government could have indicted him sooner and must have waited in order to secure an increased penalty by avoiding concurrent sentencing. Russaw uses the June 2020 body camera videos (in the 2022 discovery file) in an attempt to buttress his intent argument. The videos indicate that a federal agent was

present at his June arrest and that law enforcement on the scene suggested a federal action was forthcoming. Doc. 22, DX 10–11.

While together, circumstantially, this evidence might support Russaw's argument as to the Government's motivation, other explanations can also be extrapolated from this evidence. The Government argues the timeline suggests the case agent was continuing the investigation during at least some part of the delay.[4] Russaw argues that when the drug analysis report was returned in November 2020, the Government should have been able to indict because, even if they had not confirmed the interstate element of the ammunition with a nexus report, the ammunition box revealed a foreign name and a 30-second Google search would confirm the ammunition Russaw possessed was manufactured in Mexico. *See* Doc. 27 at 9:10–16; Doc. 26-3, DX 12A, C, D; Doc. 26-4, DX 13. According to Russaw, the delay in indicting, then, can only be explained by the Government's presumed intent to avoid concurrent sentencing. Yet, the fact that a 30-second Google search would have confirmed the manufacturing of the ammunition does not necessitate a conclusion that the Government delayed this easy analysis to gain advantage at sentencing. Additionally, there is no indication in this evidentiary record as to when the body camera footage was provided to the case agent. Those videos were collected at some later time because they are part of the 2022 discovery file but not the 2020 discovery file. Given all

---

[4] The Government asserts that the U.S. Attorney's office received the ATF file <u>after</u> the June 8, 2021 sentencing in the 2020 case but also asserts that the file was received on "July 21, <u>2020</u>, <u>over a month after the judgment in the [2020] case was received</u>." Doc. 20 at 7 n.4 (emphasis added). This appears to be a scrivener's error, but the record leaves the date of receipt unclear.

of this, the Government's argument that at least some of the delay could have been investigative delay is well-taken.

Russaw also argues the federal agents and local authorities must have been coordinating their efforts because Coffee County, while it did not charge the firearms crimes, did pursue other crimes connected to his 2020 arrests, and the Government, while it did not charge the drug crimes from April 2020, did pursue the firearms offense connected to that arrest. Doc. 12, ¶ 25. But, their coordination or the fact that at least one federal agent was present at the June 2020 arrest and some of the responding local officers expected forthcoming federal action did not bind the Government to rush an indictment, preclude the possibility of further investigation, or negate any other benign plans for slower action.

As the Eleventh Circuit instructs, "investigative delay is fundamentally unlike delay undertaken by the Government solely 'to gain tactical advantage over the accused.'" *United States v. Lovasco*, 431 U.S. 783, 795 (1977). Delay from continued investigation will not support a due process challenge. *Lovasco*, 431 U.S. at 795 ("Rather than deviating from elementary standards of 'fair play and decency,' a prosecutor abides by them if he refuses to seek indictments until he is completely satisfied that he should prosecute and will be able promptly to establish guilt beyond a reasonable doubt."); *United States v. Thomas*, 62 F.3d 1332, 1339 (11th Cir. 1995) ("A prosecutor has no obligation to bring charges as soon as she has enough evidence to indict; instead, she may wait until she is satisfied that she has enough evidence to establish guilt beyond a reasonable doubt.") (where prosecution came after defendants in related case were convicted, finding pre-indictment delay of 55 months was due to investigative delay and not a due process violation); *see also United*

*States v. Diaz*, 846 F. App'x 846, 851 (11th Cir. Feb. 24, 2021) (finding no due process violation where delay caused by government waiting to secure witness against defendant "as it was trying to bolster its case"); *United States v. Munoz*, Crim. A. No. 1:18-CR-234-TWT-JKL-5, 2020 WL 4484510, at *4 (N.D. Ga. Feb. 11, 2020), *report and recommendation adopted*, 2020 WL 4464632 (N.D. Ga. Aug. 4, 2020), ("Even if Munoz is correct that the government had enough evidence to charge him but nevertheless delayed indicting him because it wished to continue investigating the case, such a decision does not reflect a bad faith or deliberate choice to gain a tactical advantage at trial.").

Investigative delay is not the only explanation that might be gleaned from the record. The timeline and comparison of the discovery files just as easily could support the case agent's slow preparation of the second case for a recommendation to prosecute. *See* Doc. 27 at 25:3–16. The record demonstrates the case agent was involved in both the 2020 and 2022 cases, and Russaw argues he also assisted at the June 8, 2021 sentencing (Doc. 23 at 6). However, the record is silent as to his involvement regarding the June 2020 conduct between that arrest and the June 2021 sentencing, and it shows his recommendation on the June 2020 conduct did not come until after the sentencing. This might suggest neglect in pursuit of the charges, but thoughtlessness about timing or other less-than-diligent but not deliberate reasons for the delay will not support a showing of tactical advantage. *See United States v. Benson*, 846 F.2d 1338, 1343 (11th Cir. 1988) ("In the instant case, the appellant has failed to show that the government deliberately delayed

rendering the indictment in order to gain a tactical advantage over the defendant. The record of the evidentiary hearing shows that the delay was pure negligence.").[5]

The record before the Court is insufficient to carry Defendant's burden to establish the reason for the delay was deliberate action by the Government to gain tactical advantage over Defendant at sentencing by avoiding concurrent sentencing. While the Government has not presented evidence explaining the delay, it is not the Government's burden to come forward with a reason. The Court cannot make the leap Russaw suggests on this record. *See Foxman*, 87 F.3d at 1223 n.2 ("[W]here the record shows no reason for the delay (or where delay is due to simple negligence), no due process violation exists."); *United States v. Marshall*, 360 F. App'x 24, 26 (11th Cir. 2010) ("Even where no good, detailed reason for the delay exists, we will not provide relief due to a pre-indictment delay unless there is evidence of bad faith or intent to gain a tactical advantage.") (citing *Stoner*, 751 F.2d at 1543); *United States v. Simmons*, No. 1:18-CR-00144-TWT-RGV, 2019 WL 8647824, at *4 (N.D. Ga. Oct. 8, 2019), *report and recommendation adopted*, No. 1:18-CR-144-TWT, 2020 WL 2198027 (N.D. Ga. May 6, 2020) ("[Defendant] has simply shown, at most, that 'the delay–combined with [some] prejudice to him . . . gave the government a tactical advantage'; however, 'simply gaining a tactical advantage is not enough.' . . . [I]t "does

---

[5] Additionally, Russaw argues that "[t]he timing of initiation of the federal prosecution of the June 10 incident . . . raises the clear concern that the present case was initiated because someone, perhaps the case agent, [was] either dissatisfied with Mr. Russaw's sentence for the April incident, and/or deliberately intended to stack cases against him." Doc. 23 at 7. If, as Russaw argues, the case agent acted in reaction to the sentencing, then there was no intent to delay. There was simply a delay and a later decision to pursue action because of displeasure with the sentence. No government-designed act to gain a tactical advantage would bear out under this theory. *See Foxman*, 87 F.3d at 1223 ("The delay must . . . be the product of a deliberate act by the government designed to gain a tactical advantage.").

not satisfy [his] duty to show that the [g]overnment deliberately delayed the indictment to gain a tactical advantage.") (internal quotations and citations omitted) (citing *United States v. Lamb*, 214 F. App'x 908, 912 (11th Cir. 2007)); *United States v. Lopez-Giraldo*, No. 1:17-CR-395-MLB, 2021 WL 6072449, at *5 (N.D. Ga. Dec. 23, 2021) ("[E]ven if the government did decide to put the case on the backburner, we still do not know why it made that decision. This is critical because the government's motivation 'must violate fundamental conceptions of justice, or a sense of fair play or decency.'") (quoting *Wetherald*, 636 F.3d at 1324 (citing *United States v. Jones*, No. 1:18-CR-20053-UU, 2018 WL 4354891, at *3 (S.D. Fla. Sept. 12, 2018) (contrasting "a lack of attention" with the requisite purpose "to obtain a tactical advantage")).

Russaw may justifiably be unhappy with the timing, and it may even be odd; however, the record does not demonstrate a violation of "fundamental conceptions of justice [] or a sense of fair play or decency." Therefore, Russaw has not met his heavy burden of showing the Government deliberately acted to gain a tactical advantage over him.

Finally, it is worth noting that caselaw does not unequivocally demonstrate that the tactical advantage standard can be met by demonstrating the Government's action was a deliberate device to gain an advantage over a defendant *at sentencing*. The parties have cited no case specifically analyzing tactical advantage over sentencing in the context of a pre-indictment delay Fifth Amendment challenge. Many of the cases discussing this part of the test suggest it is limited to trial advantage. For example, cases refer to this part of the test as the government's "intentionally maneuvering for an advantage at trial" and

deliberately working to achieve "tactical advantage at trial." *See Marion*, 404 U.S. at 324 (noting "the Government concedes that the Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that the pre-indictment delay in this case caused substantial prejudice to appellees' rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused . . ."); *United States v. Buckingham*, No. 4:18-CR-00376-RDP-JEO-2, 2018 WL 6570874, at *3 (N.D. Ala. Dec. 13, 2018) ("'Nowhere does he allege or offer to prove that the government's delay in indicting him was a deliberate choice calculated to give the government a tactical advantage in this prosecution.); *United States v. Stoll*, No. 10-60194-CR, 2011 WL 939251, at *2 (S.D. Fla. Feb. 16, 2011), *report and recommendation adopted*, No. 10-60194-CR, 2011 WL 765949 (S.D. Fla. Feb. 25, 2011) (finding defendant failed to making a showing on this prong of the test and holding that he "did not proffer any evidence showing that the Government's reason for the alleged delay was to gain a tactical advantage at trial").

As an explanation for the caselaw focus on trial advantage, Russaw argues that most of the cases involve defendants who went to trial, but Eleventh Circuit dicta also suggests the pre-indictment delay tactical advantage test is focused on trial advantage. In *United States v. Foxman*, the Eleventh Circuit discussed its interpretation of the test. 87 F.3d at 1223 n. 2 (11th Cir. 1996). There, the Court sought to explain the use of a "bad faith" label for governmental action in the context of satisfying the tactical advantage test.

> In context, we think those cases used the words "bad faith" to mean that the government acted to delay an indictment, hoping that the delay—in and of itself—would prejudice the defense. In "bad faith" cases, the government intentionally acts to delay; and the tactical advantage sought is the prejudice to the defendant which the government anticipates will flow from the delay.

But, bad faith in this sense or in the sense of a subjective sinister motive is not critical to a due process violation for preindictment delay. The critical element is that the government makes a judgment about how it can best proceed with litigation to gain an advantage over the defendant and, as a result of that judgment, an indictment is delayed. Then, the question becomes whether that delay caused the defendant actual substantial prejudice.

The government, as litigating party, might pursue tactical advantages other than prejudice directly caused by delay. We think intentional government acts designed to obtain a tactical advantage which only incidentally cause delay have never been ruled out as a potential basis for due process violations. The main point is showing acts done intentionally in pursuit of a particular tactical advantage: delay (and the prejudice directly caused by the delay) need not necessarily be the tactical advantage sought.

We also observe that many delays in obtaining an indictment would not be *"tactical"—a word which we think inherently includes the concept of intentionally maneuvering for an advantage at trial.*

*Id.* (emphasis added). While this footnote does not espouse a binding principle eliminating sentencing maneuvering as a qualifying advantage, it is suggestive that the Fifth Amendment pre-indictment delay test is focused on efforts designed to put the government ahead of the defendant in litigating through trial—in achieving a conviction—and not efforts designed to gain advantage for what might come after (and if) a conviction is obtained.

The Northern District of Georgia in *United States v. Pendergrass* found governmental strategy to secure maximum sentencing insufficient to meet the tactical advantage test. No. 1:17-CR-224-AT-LTW, 2020 WL 9934614 (N.D. Ga. May 4, 2021), *report and recommendation adopted*, No. 1:17-CR-224-AT-LTW, 2021 WL 1748137 (N.D. Ga. May 4, 2021). The *Pendergrass* court found unavailing defendant's argument based on the government's purported tactical advantage by prosecuting him in more than

one district, thereby ensuring maximum punishment in each district. Denying the motion

to dismiss, the court concluded, "This . . . does not amount to a tactical advantage at trial."

*Id*. at *5.

The district court adopting the *Pendergrass* recommendation noted the timing might

have been peculiar, but that was not enough to demonstrate a due process violation.

> [T]he U.S. Attorney's Office waited to indict Defendant on these City of
> Atlanta related fraud offenses until after Defendant's completion of his
> sentence in 2017 for other fraud offenses for which he was indicted on
> January 30, 2014, in the U.S. District Court for the Southern District of Ohio.
> The Court understands that this facially might appear a peculiar or suspect
> sequence of events, as Defendant alleges. But the reality is that Mr.
> Pendergrass was simultaneously facing potential separate and distinct
> criminal charges in the Southern District of Ohio and Northern District of
> Georgia in the same time frame. The federal prosecutors in Ohio moved more
> quickly. The Government in the instant case secured a grand jury indictment
> here on June 27, 2017, shortly before Defendant was released from federal
> custody on his Ohio conviction and within the statute of limitations for the
> charged offenses. The Government's determination to wait to pursue the
> indictment [based on a 2013 arrest] in this jurisdiction until Defendant's
> release from his sentence on the Ohio charges simply by itself does not
> constitute bad faith, even though it technically could have proceeded while
> Defendant was incarcerated on the Ohio criminal offenses.

*Pendergrass*, 2021 WL 1748137, at *1.

While Russaw was indicted both times in the same district, the Court finds the

*Pendergrass* court's analysis persuasive here. Assuming the Government waited to pursue

the second indictment in this district until after Russaw was sentenced in the 2020 case for

the purpose of *possibly* achieving a longer combined sentence after achieving a conviction

in this separate criminal action, the Court concludes such action does not constitute the

type of tactical advantage that will support a Fifth Amendment due process claim on these facts. Like Pendergrass, Russaw has failed to satisfy the tactical advantage part of the test.[6]

Because the applicable test is a conjunctive one, "failure of proof as to either prong is fatal to a claim." *United States v. Holland*, No. 1:17-CR-00234-AT-CMS, 2018 WL 8838858, at *5 (N.D. Ga. July 27, 2018), *report and recommendation adopted*, 396 F. Supp. 3d 1210 (N.D. Ga. 2019) (quoting *Lovasco*, 431 U.S. at 790). For this reason, the motion should be denied. However, as discussed below, even if the Court found that Russaw demonstrated the delay was an intentional device to gain tactical advantage, he cannot establish the second part of the test to show actual prejudice.

## B.    Actual Prejudice

"[T]he law in this circuit is that prejudice will not be presumed because of a lengthy delay." *Stoner*, 751 F.2d at 1544. "[W]hen preindictment delay is asserted, actual prejudice and not merely 'the real possibility of prejudice inherent in any extended delay,' is a necessary element which must be shown before the restraints of the due process clause will be applied to bar a prosecution because of a delay." *United States v. McGough*, 510 F.2d

---

[6] Certainly, a defendant is entitled to due process at sentencing, but efforts to eventually obtain a maximum sentence may not be the type of deliberate delay-based action intended as part of the Fifth Amendment analysis based on a pre-indictment (and pre-sentencing) delay. *See Gardner v. Florida*, 430 U.S. 349, 358 (1977) (finding due process violation when death sentence was imposed, at least in part, on basis of confidential information in presentence report but not disclosed to defendant or his counsel). Here, there is no sentence at all; this case presents only the mere possibility of a sentence. Not every delay tactic is one that will satisfy the "tactical advantage" test concerning a pre-indictment delay. *See Simmons*, 2019 WL 8647824, at *3 (recognizing that "[t]he delay must also be the product of a deliberate act by the government designed to gain a tactical advantage" and that "[m]any delays in obtaining an indictment would not be tactical–a word which [the Eleventh Circuit has interpreted as] inherently includ[ing] the concept of intentionally maneuvering for an advantage at trial").

598, 604 (5th Cir. 1975) (quoting *Marion*, 404 U.S. at 324)).[7] For example, when a defendant argues the death of a witness during the delay caused prejudice, the loss of the witness testimony alone is not enough to satisfy the test. The defendant "must make more than a general allegation of loss of witnesses[,]" and he "must show that the loss impaired his ability to provide a meaningful defense." *Stoner*, 751 F.2d at 1544 (quoting *Solomon*, 686 F.2d at 872). Satisfying the prejudice test is a steep but not insurmountable burden. *See United States v. Mills*, 704 F.2d 1553, 1557 (11th Cir. 1983) (death of witness who had confessed to same murder with which defendant had been charged was "genuinely prejudicial" to defendant's case).

### 1.    Russaw's Prejudice Argument and the Government's Response

Russaw asserts that the Government's delay in bringing the indictment caused him prejudice because he lost the ability to be sentenced concurrently on charges related to the April 2020 conduct and the charged June 2020 conduct. He also argues he has suffered prejudice because the delay (i) prohibits him from earning good time credits while serving his sentence in the 2020 case[8] and (ii) prevents his early release to a halfway house before his originally anticipated June 25, 2023 BOP release date.

The Government responds that Russaw's prejudicial sentencing argument is speculative, and, while the sentencing guidelines would have recommended a concurrent sentence had Russaw been charged with the April and June 2020 conduct together (and

---

[7] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.
[8] Russaw asserts that because he was placed in the custody of the United States Marshals, he lost the ability to earn good time credits, including those he may have earned through BOP programs and the First Step Act. *See* 28 C.F.R. § 523.42(a).

pleaded guilty or been found guilty), no concurrent sentence would have been required. Additionally, the consideration of any sentence for the June 2020 conduct—for which Russaw is presumed innocent—is itself speculative. The Government also points out that it does not control the BOP programs that Russaw may have been eligible to earn while in BOP custody. Given this, the Government says Russaw cannot show actual, substantial prejudice.

2.    Prejudice Analysis

The parties agree that if the charges had been brought together they would have been closely-related groups of counts, and the sentencing guidelines would have recommended a concurrent sentence. *See* U.S.S.G. §§ 3D1.1., 3D1.2, 3D1.3, 5G1.2(b); *United States v. Jimenez-Cardenas*, 684 F.3d 1237, 1239 (11th Cir. 2012) ("When a defendant has more than one count of conviction, U.S.S.G. § 3D1.1 of the Sentencing Guidelines instructs the district court to group the counts 'into distinct Groups of Closely Related Counts' by applying the rules in § 3D1.2. After that is done, the district court determines the offense level for each Group by applying the rules in U.S.S.G. § 3D1.3. The district court then determines the 'combined offense level' applicable to all 'Groups taken together' by applying the rules in U.S.S.G. § 3D1.4. See U.S.S.G. § 3D1.1(a)."). The district judge would have considered the guidelines range and other sentencing factors under 18 U.S.C. § 3553(a) to determine a proper sentence. He would not have been mandated to impose a concurrent sentence. *See United States v. Henry*, 1 F.4th 1315, 1321 (11th Cir. 2021), cert. denied ("[A] judge can choose an outside-Guidelines sentence so long as the judge has considered, and the sentence reflects, the factors outlined in § 3553(a)

. . . . So while many guidelines use the terms 'must' or 'shall,' that language simply requires courts to properly consider them when deciding the advisory Guidelines recommendation—it does not render them mandatory when imposing the final sentence. . . . We have regularly corrected litigants who 'fail[ ] to appreciate the advisory nature of every provision of the guidelines.'") (citations omitted); *United States v. Souphanthog*, 793 F. App'x 877, 881 (11th Cir. 2019) ("Grouping of counts under § 3D1.2 does not preclude a district court from imposing consecutive sentences on each count.") (citing *United States v. Bonilla*, 579 F.3d 1233, 1245 (11th Cir. 2009) (holding that, "[a]lthough the underlying offenses were grouped together . . . [t]he district court's imposition of consecutive sentences" was not an abuse of discretion)); *United States v. Sihwail*, 506 F. App'x 955, 958 (11th Cir. 2013) ("Once the court made those calculations [under the guidelines], it had the discretion to order that the sentences imposed run concurrently or consecutively. *See* 18 U.S.C. § 3584(a). The record reflects that the court expressly said that it had considered the § 3553(a) factors, as required by § 3584(b) prior to imposing a consecutive sentence.").

The sentencing guidelines will also apply in this case if Russaw pleads guilty or is found guilty after a jury trial. The guidelines range—whatever it may be if the case results in a conviction on either or both charges—will, again, not be binding on the district judge. He will consider the guidelines range, along with other statutory sentencing factors, objections, and arguments of the parties, and then impose a sentence that he concludes is reasonable and sufficient but not greater than necessary to comply with the statutory purposes of sentencing. Moreover, while it may be unlikely, as Russaw argues, it is

possible that departures from any applicable sentencing guideline range could result in imposition of a sentence in this case that would essentially be the equivalent of what may have been a concurrent sentence had the charges been sentenced together. *See United States v. Stuart*, 384 F.3d 1243, 1247 (11th Cir. 2004) (in a pre-*Booker* decision reviewing a downward departure below the guidelines range, holding, "We need not decide whether preindictment delay is a valid basis for departure . . . because this record does not justify a downward departure . . . . We hold that, at a minimum, a downward departure for preindictment delay would have to be predicated on some prejudice to the defendant, and there is no evidence of prejudice to Stuart from any delay."). Thus, a prejudice argument based on possible sentencing here is speculative at best. *Tiemens*, 724 F.2d at 929;[9] *see also Pendergrass*, 2020 WL 9934614, at *4 ("Similarly flawed is his speculation that the delay caused him to lose his opportunity to have his two federal cases resolved at the same time and possibly obtain concurrent sentences. . . . These baseless claims are insufficient to meet the 'exceedingly high' standard for making out a Due Process violation.") (citing *Butler*, 792 F.2d at 1533 ("Speculative allegations, such as [a] general allegation of loss of

---

[9] The parties quibble over the applicability of *Tiemens v. United States*. In *Tiemens*, the defendant was apprehended after escaping from prison. During his escapade, he was identified as involved in a securities forgery operation. Defendant admitted his complicity in the operation after he was reapprehended. He was convicted on the escape charge and returned to prison, but as his release date approached, he was indicted in the securities forgery operation. He pleaded guilty. *Id*. at 929. In a petition under 28 U.S.C. § 2255 to vacate his conviction in the securities case, he argued the government's delay in bringing the indictment violated his due process rights. The Eleventh Circuit held the claim was waived by his guilty plea. The defendant also alleged that his counsel was ineffective for not raising pre-indictment delay. The court held the claim was without merit and, without further analysis, simply concluded, "Here, the prejudice alleged by defendant—that his opportunity to be sentenced on the securities charge concurrently with the escape charge—is at best speculative, not actual. He makes no other claim of prejudice." *Id*. Russaw argues this holding is inapplicable because the case preceded the sentencing guidelines, and he argues it does not stand for the proposition that sentencing cannot present a due process violation. The Government argues the holding supports the argument that sentencing is inherently speculative. The Court agrees with the latter.

witnesses and failure of memories, are insufficient to demonstrate the actual prejudice required.") (citation omitted)); *Pendergrass*, 2021 WL 1748137, at *1 (adopting recommendation to deny motion to dismiss indictment and holding that defendant made "colorable but insufficiently persuasive allegation of prejudice in connection with his Fifth Amendment due process claim").

While Russaw may not get a sentence in this case equivalent to a concurrent sentence that would have been guidelines-recommended had the June 2020 conduct been charged sooner, this outcome is nothing more than the real *possibility* of prejudice inherent in the fact that a sentence, if any, will follow his sentence in the 2020 case. Significantly, no sentence in this case is even likely at this time. Even if a sentencing hearing were imminent in this case, there is no guarantee as to what sentence Russaw will receive from the district judge. Speculative prejudice is insufficient to fulfill the due process test. A showing of actual prejudice is required. *See Foxman*, 87 F.3d at 1222 ("actual substantial prejudice"); *Holland*, 396 F. Supp. 3d 1210, No. 1:17-CR-00234-AT-CMS, 2018 WL 8838858, at *5 (N.D. Ga. July 27, 2018), *report and recommendation adopted*, 396 F. Supp. 3d 1210 (N.D. Ga. 2019) ("Courts require proof of actual prejudice; something that rises to 'constitutional proportions' or impairs the fairness of trial.") (citing *Solomon*, 686 F.2d at 871; *Stoner*, 751 F.2d at 1544).

Another court in this circuit presented with argument of prejudice based on the addition of new charges and increased possible sentencing resulting from delay found the circumstances insufficient to demonstrate actual prejudice for a Fifth Amendment pre-indictment delay challenge. In *United States v. Lopez-Giraldo*, the Northern District of

Georgia addressed an argument similar to Russaw's argument and held that exposure to more charges, even if those additional charges allowed the government to seek an increased sentence, did not meet the actual prejudice test. 2021 WL 6072449, at *4. Finding the defendants' argument based on increased legal exposure from additional charges unpersuasive, the court held:

> Defendants complain the pre-indictment delay allowed the government to conduct further investigation and add a conspiracy charge against them. They say this increased their legal exposure, which constitutes actual prejudice under the Due Process Clause. (*See* Dkts. 237 at 2–3; 239 at 3.) Incorrect. Defendants "do[ ] not cite any authority for the proposition that the addition of charges constitutes 'prejudice.'" *United States v. Chan*, 2006 WL 2255743, at *2 (N.D. Cal. Aug. 7, 2006). Indeed, a delay does not prejudice a defendant simply because it gives "the government time to bring additional charges against [him]," even if those new charges "permit[ ] the government to seek a substantially increased sentence." *United States v. Wilson*, 962 F.2d 621, 623–24 (7th Cir. 1992). Instead, the delay must have "impaired either the preparation of [defendant's] defense or the fairness of his trial"—egregious injuries that "rise to [the] constitutional proportions [required] to support dismissal." *United States v. Keel*, 254 F. App'x 759, 760 (11th Cir. 2007). That Defendants now face more charges than they would like is not constitutionally cognizable prejudice under this stringent standard. The extra charge "may displease [Defendants], but the government is entitled, in good faith, to vigorously pursue all available criminal charges against a defendant." *Wilson*, 962 F.2d at 624."

*Id*.

While this case is not binding on the Court, it is persuasive and helpful to consider in analyzing Russaw's similar argument. Russaw argues that the increased sentence he may face without a guidelines-recommended concurrent sentence is actual prejudice that satisfies this part of the Fifth Amendment preindictment delay analysis. Like the *Lopez-Giraldo* court, the undersigned finds it does not. The argument is flawed because it is inherently based on speculation—possible and not actual prejudice. Like the defendants in

*Lopez-Giraldo*, Russaw faces new charges that perhaps could have been brought sooner, but he is presumed innocent in this case and still has the possibility of a favorable outcome.

Both Russaw's good time credits and halfway house arguments are similarly based on speculation and do not demonstrate actual, substantial prejudice resulting from the delayed indictment. Certainly, both would be beneficial for Russaw to have earned while serving his sentence in the 2020 case. However, both are benefits administered by the BOP, not the Government. The Government does not control the award of good time credits or the assignment of inmates to a halfway house. While Russaw may have earned good time credits and time in a halfway house before his release had he remained in BOP custody, neither BOP program was an absolute guarantee to Russaw. *See* 28 C.F.R. §§ 523.41(d); 523.42(a); 523.44; 28 U.S.C. § 570.21. It is true that Russaw cannot earn either benefit now that he has been transferred to the custody of the United States Marshals as a result of his arrest in this case. *See* 28 C.F.R. § 523.41(c)(4)(iii). However, the prejudice he argues he has suffered by virtue of losing these benefits is the loss of a *possible* and not *actual* award. Russaw's argument is based on the hope of earning those benefits, and even if that were well-founded while in the BOP, it is not loss of an actual benefit. His move out of BOP, which makes him ineligible for good time credits or a halfway house early release, is not the kind of actual prejudice that will support a Fifth Amendment violation. *See Pendergrass*, 2020 WL 9934614, at *5 ("[T]o the extent that Pendergrass was not allowed to go to a halfway house, I see no direct correlation between the BOP's actions and the actions of the federal prosecutors. The record reveals nothing to show that anyone acting on behalf of the government played any role whatsoever in [local law enforcement's]

decision to advise the BOP that it intended to indict [defendant] or the BOP's decision to withhold placement at a halfway house.").

Additionally, Russaw makes no argument that the delay before charges in this case were brought impaired his ability to prepare a defense to this prosecution or the fairness of his eventual trial. The prejudice occurred, if at all, when he was sentenced in the 2020 case with no pending federal charges for the June 2020 conduct and when he was placed in USMS custody as a result of the subsequent 2022 indictment. These outcomes of the delayed indictment did not prejudice Russaw's ability to mount a defense to the prosecution of the 2022 indictment or cause prejudice to the fairness of the trial he will get in this case. *See Marion*, 404 U.S. at 323–25 ("Actual prejudice to the defense of a criminal case may result from the shortest and most necessary delay; and no one suggests that every delay-caused detriment to a defendant's case should abort a criminal prosecution. To accommodate the sound administration of justice to the rights of the defendant to a fair trial will necessarily involve a delicate judgment based on the circumstances of each case."); *United States v. Russo*, 796 F.2d 1443, 1451 (11th Cir. 1986) (stating the defendant "must show that his right to a fair trial was substantially prejudiced"); *see also United States v. Stoudemire*, No. 120-CR-00220-SDG-RDC-1, 2021 WL 1940656, at \*4 (N.D. Ga. May 14, 2021) ("The fact that [Stoudemire] has been physically separated from his children since his arrest, suffers from anxiety, was unable to participate in a rehabilitation program and may have made incriminating statements while incarcerated, fails to establish he is somehow prevented from mounting a defense to the pending charges. These circumstances, which likely occur in nearly every federal criminal prosecution, fall short of the type of

harm that constitutes a due process violation."); *Pendergrass*, 2020 WL 9934614, at *4 ("Pendergrass is required to show that his ability to defend against the charges in the indictment has been meaningfully impaired to the point that the disposition of [the] case will likely be affected. *See United States v. McKoy*, 129 F. App'x 815, 819 (4th Cir. 2005). Pendergrass has not shown that his ability to defend against the charges was impaired at all, much less significantly."). For this additional reason, the Court finds the prejudice test unsatisfied.

## III.    CONCLUSION

Because Russaw has failed to meet his heavy burden to show that the preindictment delay was the product of deliberate design by the Government to gain a tactical advantage over him and to show actual prejudice, the undersigned concludes his claim of unconstitutional pre-indictment delay fails. It is the RECOMMENDATION of the Magistrate Judge that Russaw's Motion to Dismiss (Doc. 12) be DENIED.

It is further ORDERED that on or before **March 21, 2023**, the parties may file objections to the Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive, or general objections will not be considered by the Court. The parties are advised that this Recommendation is not a final order and, therefore, is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the

Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except on grounds of plain error or manifest injustice. *See* 11TH CIR. R. 3-1.

DONE this 7th day of March, 2023.


/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE